IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| GABRIEL + BEACON HOLDING CO., | § | Case No. 15-H5-33062 |
| LLC, | § | |
| | § | Chapter 11 |
| Debtor | § | |
| | § | |

**DEBTORS RESPONSE THIRD MILLENNUIM CAPITAL INC. MOTION FOR RELIEF FROM AUTOMATIC STAY OF AN ACT AGAINST REAL PROPERTY PURSUANT TO 11 U.S.C. § 362(d) and RULE 4001[DOC. 71]**

COMES NOW, Gabriel + Beacon Holding Co., LLC ("Gabriel"), and for its RESPONSE TO THIRD MILLENNUIM CAPITAL INC.*MOTION FOR RELIEF FROM AUTOMATIC STAY OF AN ACT AGAINST RAL PROPERTY PURSUANT TO 11 U.S.C § 362(d) and Rule 4001*, (respectfully, the "Response") states and alleges:

1. Debtor ADMITS that this Court has jurisdiction over the case, and the property in the Debtor's estate.

2. Debtor ADMITS in part, as it relates to the Debtor executing a promissory note to Third Millennium Capital Inc., on August 6th, 2012. The Debtor DENIES that Third Millennium Capital Inc., is a secured creditor in this case.

3. ADMITS.

4. ADMITS.

*5.* Debtor ADMITS in part, solely as it relates to "…*effective November 1, 2013, Exquisite was to pay to Third Millennium monthly installments of all accrued and unpaid interest on the Note calculated from October 1, 2013 through October 1, 2014; such payment initially being $4,083.33 per month*".

The Debtor DENIES that "…*payable on October 1, 2014 in the event that the real property securing the Note (defined below as the "Property") was not sold*….." None of the "Property" described in Third Millennium's motion requesting for relief of automatic stay was security to the Modified Note signed by the parties in October 2013, post-confirmation of the Exquisite Plan.  With review of Section 7.01, Page 36 of 40 of the Exquisite Plan, it becomes apparent that there is a provision supporting §1141 of Bankruptcy Code, which the Exquisite Plan clearly stated,  **"After confirmation of the Debtor's Plan, <u>all property of the Debtor dealt with by the Plan (which includes all property of the Debtor) is free and clear of all liens, claims, and interests of creditors</u> and equity security holders, <u>except to the extent provided in this Plan</u>."**. Review of Class 4, Section 3.19, of the Exquisite Plan, clearly reflects that ALL of the property in Third Millennium's Motion for Relief of Automatic Stay was already dealt with in the Exquisite Plan, and that property is subject to the binding Plan provisions.

More importantly, the Exquisite Plan has no loan number, reference number or any other unique identifier (date, county recording number, loan number, etc..) to the alleged Deed of Trust securing the Original Note or Modified Note.  Instead, the Exquisite Plan refers back to the "*Promissory Note dated August 6, 2012*" as the post-confirmation governing document.  If the Court reviews that Promissory Note dated August 6, 2012, the Court will find that the original Note (later to be replaced and modified) is <u>secured by a Deed of Trust dated August 7, 2012</u>.  Thus, any other liens, claims, and interest of creditors that was not provided for in the Exquisite Plan, **but** the subject property that was dealt with in the Plan, is free and clear of all liens, claims, and interest of creditors…" upon confirmation under the Exquisite Plan and 11 U.S.C 1141.

Exquisite Plan goes on to further state "*To the extent that any conflict exists between the terms described herein and the Modified Note, the Modified Note shall control*". Review of Modified Note, this Court will find the same language as in the Original Note, as it relates to the Deed of Trust, exist. The Modified Note states note (now modified) is secured by a "Deed of Trust dated August 7, 2012". Third Millennium already ADMITS in [Docket No. 70] in this case, paragraph #2 which they stated "*Third Millennium admits that on August 6, 2012, the Debtor executed a Promissory Note and Deed of Trust dated August 6, 2012*". Third Millennium further admits in paragraph #4, of the same document, that an error existed when stating "*Third Millennium admits that no August 7, 2012 deeds of trust exist*"

The Debtor further believes that a *novation* of a contract (or Notes) was created when the Exquisite Plan was confirmed. The Debtor points out that the Original Promissory Note has a maturity date of August 7, 2013, and Deeds of Trust has a maturity date of August 6, 2013. Despite the fact that another critical date [the maturity date] on the face of the Note and Deeds, again contradicts each other, both documents matured PRIOR to the confirmation of the Exquisite Plan on September 30, 2013. There is no provision in the Exquisite Plan or the Modification of Note which "reinstates" or "renews" the previously expired contract or loan agreement. The Modification of Note, along with the Exquisite Plan has all the markers of a "novation" of a contract.

Aside from the expiration of the original Note, the terms of the Exquisite Plan and Modification of Note terms replaced the original Note, with a new maturity date. The loan amount increased by providing future advances of $33,000.00, in addition to the

original loan amount, and the interest rate change. For a novation to exist, the following must occur: (1) the validity of a previous obligation, (2) an agreement among all parties to accept a new contract, (3) the extinguishment of the previous obligation, and (4) the validity of the new agreement. *Fulcrum Cent. v. AutoTester, Inc., 102 S.W.3d 274, 277 (Tex. App.-Dallas 2003, no pet.) (citing Vickery v. Vickery, 999 S.W.2d 342, 356 (Tex. 1999))* For these reason, the actual August 6, 2012 Deeds of Trust does not secure the Modification of Note signed in October 2013, post-confirmation on the Exquisite Plan.

6.   Debtor ADMITS (in part) that the Note and Modification were secured by the liens of those certain Three (3) Deeds of Trust (the "Deeds of Trust") each dated August 7, 2012. The Debtor DENIES that the Modification of the Note, or the Original Note provides for any unique identifier or reference number, as in a unique Harris County Clerk File Number, or even a "recording date".

7.   ADMITS

8.   DENY (in part). From October 2013 through May 2014, Exquisite made approximately $900 in additional payments per/month, which equated to several thousands of dollars in additional payments. Third Millennium is alleging that there is no equity in the property, thus they are not subject to post-petition interest if their property valuations are accurate, but the Debtor DENIES that there is no equity.

9.   DENY. Stewart Title collected and paid property taxes on the Debtor's behalf in September 2012, at closing. The 2013-2014 property taxes were to be paid during the normal course of business, pursuant to the Exquisite Plan. All the current and 2015 taxes are to be paid pursuant to the Debtor's submitted Plan of Reorganization.

10. ADMIT, in part, as it relates to the Chapter 7 Trustee abandoned all of Exquisite's real property. Debtor contends that no actual or full appraisal was provided by the Trustee at the time of abandonment, and it's unclear if the abandonment was due to a value issue, or one related to being a burden to the estate. Thus the Debtor DENIES the latter.

11. DENY. The "taxable" value of lots 1, 3, 4, 5, and 6 is $162,013 as of January 1, 2015. Third Millennium is well aware that these properties are being taxed under fair market value at the time the loan was funded. On July 16 through July 25, 2012, Third Millennium sent a Revised Loan Proposal supporting higher values than what was reflected on the tax rolls. In 2012, Harris County Appraisal District had the taxable values at $22,120 each for the same 5 lots *and* the property under construction.

The Debtor had three other certified appraisal on the six properties, all appraisals had values of approximately $100,000 for each of the five lots ($500k combined), and the completed value of the house under construction ranging from $450k to $525k. Third Millennium hired their own appraiser prior to funding in 2012, and they too came up with similar values of approximately $900k to $975k for the six (6) combined properties. Third Millennium used a blended LTV to lend 50% of fair market value to fund the now disputed $490,000 debt. There is no way a credible lender would lend $490k to a borrower, on property they truly believed was worth $130k at onset of funding ($22,120 ea. x 6 properties, per the 2012 HCAD values). Third Millennium is also mistaken in that the Debtor is not challenging the property tax values, but the amounts alleged to be owed to the IRS for unfiled returns.

12. DENY. Debtor did not refuse to complete the construction. Third Millennium does not have evidence of refusal. Third Millennium is not a builder, nor has produced evidence of how they deduced the cost to complete the house.

13. DENY, the taxing authority appraised the property as is, not completed.

14. DENY.

15. DENY.

16. Third Millennium is not a secured creditor, and therefore cannot be under secured.

17. DENY. The Court did not modify the automatic stay, but stated it did not have subject matter jurisdiction. If an automatic stay did exist, it was lifted at confirmation.

18. Deny in part. Third Millennium received notice from the Debtor, and constructive notice with the Court Clerk prior to the foreclosure sale.

19. Admit in part, but deny in part. A Deed of Trust, by its very nature is an encumbrance like a mortgage and needs the note to survive. It has been well established in Texas law that "a mortgage securing a negotiable note is but an incident to the note and partakes of its negotiable character… 'The note and mortgage are inseparable; the former as essential, the latter as the incident.'" *West v. First Baptist Church*, 123 Tex. 388, 404, 71 S.W.2d 1090, 1098 (1934)(Citing *Carpenter v. Longan*, 83 U.S., (16 Wall) 271(1872))

20. Admit.

21. DENY. The property is critical to reorganization. Debtor was liable at the time of the filing of the petition and the estate is created at that exact moment.

22. DENY. The Deed of Trust is not a debt or obligation, but rather is an encumbrance. DENY the petition occurred before the foreclosure sale.

23. DENY.

24. DENY.

25. DENY.

26. DENY.

27. DENY.

28. DENY.

29. DENY.

## BINDING EFFECT & FINALITY OF EXQUISITE DESIGN'S

## CONFIRMATION ORDER AND EQUITABLE MOOTNESS

30. It is undisputed and admitted by Third Millennium that in Docket 70;

   i. Third Millennium fully participated in Exquisite's bankruptcy proceedings. In addition, voted in favor of the Plan, and its terms and provisions, without ever filing an appeal seeking to stay the confirmation order

   ii. Upon confirmation, under 1141(b) of the Bankruptcy Code and Article VII of the Plan's provision, that all property revested to Exquisite, and Exquisite's bankruptcy estate ceased to exist thereafter

   iii. Assumption occurred by Exquisite, under the Plan, when the business or management of all or substantially all of the property dealt with by the plan occurred.

Within days on confirmation, Exquisite closed all DIP accounts, proceeded with day-to-day business operations which included but no limited to, collection of rent, leasing, and manage real property, the construction management and re-acquisition of construction permits and insurance.

      iv.      Commencement of distribution occurred when Exquisite started to make post-confirmation payments to Third Millennium beginning October 2013, in the monthly amounts between $4,083 and $4,900, pursuant to the terms of the Plan. See Third Millennium Exhibit J.

31.    With all of the above successfully fulfilled by Exquisite, the Exquisite Plan falls under the doctrine of "equitable mootness", which is to protect the finality of confirmation orders. See, e.g., *Rev. Op. Grp. v. ML Manager LLC* (In re Mortgs. Ltd.), 771 F.3d 1211, 1215 (9th Cir. 2014). The Ninth Circuit held that "An appeal is equitably moot if the case presents transactions that are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy court order". Moreover, there was never an order in the Exquisite case that revoked or modified Order of Confirmation in the Exquisite case. Pursuant to 1141, the Exquisite Plan is binding to all parties,

32.    The Fifth Circuit, in *In re McCray*, No. 14-10965, 2015 U.S. App. LEXIS 19815 (5th Cir. 2015) found that equitably mootness is determined by three factors: "(i) whether a stay has been obtained, (ii) whether the plan has been 'substantially consummated,' and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan."

33. In a Chapter 11 case, a plan is typically "substantially consummated within weeks of confirmation." *In re Pacific Lumber Co.*, 584 F.3d 229, 242 (5th Cir. 2009) Also see*: In re Manges*, 29 F.3d at 1039, In re Hilal, 534 F.3d 498, 500 (5th Cir. 2008), *In re GWI PCS 1 Inc.*, 230 F.3d 788, 800 n. 24 (5th Cir. 2000), *In re Berryman Products, Inc.,* 159 F.3d 941, 944 (5th Cir. 1998).

### SUBSTANTIAL CONSUMMATION OF EXQUISITE'S PLAN

34. Substantial consummation is a critical juncture of any Chapter 11 proceeding and defines the point at which the debtor's obligations under a confirmed plan are sufficiently complete. After a confirmed plan is substantially consummated, subject to very limited exceptions, the confirmed plan cannot be modified and appeals of the order confirming the plan may become moot through the doctrine of equitable mootness.

35. Substantial consummation is defined in 11 U.S.C. § 1101(2) and means:

   a. transfer of all or substantially all of the property proposed by the plan to be transferred;

   b. assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

   c. commencement of distribution under the plan.

36. As stated above, Exquisite's Plan successfully and admittedly met the requirements of being substantially consummated under 11 U.S.C. § 1101(2).

37. In the case before this Court, the Debtor argues the present validity, current binding and res judicata effect of the Exquisite Plan, by showing that once a plan

has been confirmed and substantially consummated, modification of the plan by a corporate debtor is prohibited by Code § 1127. See *In re UNR Industries, Inc.*, 20 F.3d 766, 769 (7th Cir. 1994), and See *Alberta Energy Partners v. Blast Energy Servs. (In re Blast Energy Servs.)*, 593 F.3d 418, 423 (5th Cir. 2010)

38.     In the event the Exquisite Plan cannot be modified and still holds a binding effect, the Debtor arguments the following:

> I.      Any errors or omissions in the Exquisite Plan, now being addressed in the Gabriel bankruptcy case, are also binding and cannot be corrected at this point, or post-petition in the Gabriel case.
>
> II.     The Exquisite Plan, and subsequent Modification of Note resulting from the Exquisite Plan, clearly states the Gabriel and Exquisite note is secured ONLY by Deed of Trust dated August 7, 2012, to which Third Millennium has admitted does not exist.  See Docket 70.
>
> III.    The 1141(b) provision in the Bankruptcy Code, the Exquisite Plan itself, and Post-Confirmation Order [Third Millennium Exhibit J] signed in the Exquisite case, specifically states that "all property of the Debtor dealt with by the Plan (which includes all property of the Debtor) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan."

39.     Because of the reason stated above, Third Millennium is an unsecured creditor at the time of the Gabriel + Beacon bankruptcy petition in 2015, because any pre-

existing August 6, 2012 lien/Deed of Trust was extinguished at confirmation of the Exquisite Plan.

WHEREFORE, Gabriel & Beacon Holding Co., L.L.C., prays this Court to Deny Third Millennium Capitals Relief from Automatic Stay pursuant to the evidence submitted and the arguments presented above.

Respectfully Submitted,

PARCHMAN LAW GROUP P.L.L.C.
By:
*Jon Parchman*
Jon Parchman
State Bar No. 24085517
21 Waterway Ave, Suite 300
The Woodlands, Texas 77380
Telephone:  (713) 518-1902
Facsimile:   (832) 442-5665
Jon.parchman@parchmanlaw.com

CERTIFICATE OF SERVICE

This is to certify that, on 1/13/2016, a copy of this Motion was served on all counsel through the Court's ECF system.

*Jon Parchman*

Jon Parchman